**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ROOSEVELT MEEKS,

     Plaintiff,

                            Northern District of Georgia

vs.                       Civil Action No.: 1:18-cv-3662-WMR-AJB

ENHANCED RECOVERY COMPANY, LLC,
a foreign limited liability company,

     Defendant.

_____/

### MOVANT, ENHANCED RECOVERY COMPANY, LLC'S MOTION TO COMPEL DEPOSITION TESTIMONY AND DOCUMENTS FROM OBJECTOR, CREDIT REPAIR LAWYERS OF AMERICA

Movant, Enhanced Recovery Company, LLC ("ERC"), pursuant to Federal Rules of Civil Procedure 37 and 45, moves this Court to enter an Order compelling Objector, Gary Nitzkin, P.C., doing business as Credit Repair Lawyers of America ("CRLA"), to produce a corporate representative to testify at deposition and produce the documents requested in ERC's subpoena, and in support thereof states as follows:

1.     On multiple occasions prior to the deposition of CRLA taken on April 3, 2019, the undersigned counsel personally spoke to counsel for CRLA, Gary Nitzkin and Carl Schwartz, and exchanged emails with them, regarding the discovery sought. Additionally, at the deposition of CRLA taken on April 3, 2019,

the undersigned counsel conferred with Carl Schwartz both on and off the record about the objections asserted and about his instructions to the witness not to answer numerous questions posed to the witness. Further, on April 5, 2019, Mr. Schwartz attended a telephone hearing in this matter during which ERC advised the Magistrate Judge assigned to this case in the Northern District of Georgia that ERC intended to file a Motion to Compel to resolve these issues, and the Judge directed ERC to file the motion by April 12, 2019. On April 12, 2019, I contacted counsel for CRLA one last time to see if the company had changed its position, and I have not received confirmation that CRLA has changed any of its positions on refusing to provide the information sought in this Motion.

2.    The firm of Credit Repair Lawyers of America ("CRLA"), located within this District, has filed a total of six lawsuits against ERC under the Fair Debt Collection Practices Act (the "Federal Act") based on similar facts. In each of these claims, CRLA alleges, on behalf of the respective plaintiffs, that ERC violated the Federal Act by failing to mark the plaintiff's account as disputed after the plaintiff allegedly sent a dispute letter to ERC. However, despite maintaining procedures for receipt of correspondence, ERC has no record of receiving any of the dispute letters for CRLA's clients in any of the six actions.

3.    These circumstances, which are suspicious at best, have necessitated discovery regarding the mailing of each of these letters. While, typically, ERC

would depose the plaintiff regarding the mailing of the letter, these cases present a unique circumstance in that CRLA signs and mails the letter on behalf of its clients, although the letters do not identify that they were mailed by CRLA. Thus, the only person/entity with knowledge regarding the mailing of the letters is CRLA.

4.      One such matter filed by CRLA against ERC is *Roosevelt Meeks v. Enhanced Recovery Company, LLC*, which is presently pending in the United States District Court for the Northern District of Georgia with Case No. 1:18-cv-3662-WMR-AJB.

5.      On or about March 19, 2019, ERC served its Notice of Taking Deposition Duces Tecum of the corporate representative of CRLA on local counsel for Roosevelt Meeks in the above-described case. Thereafter, on or about March 21, 2019, ERC served CRLA with a subpoena *duces tecum* (the "Subpoena") for said deposition pursuant to Federal Rule of Civil Procedure 45. A true and correct copy of the subpoena is attached hereto as **Exhibit A**. Pursuant to this Notice and Subpoena, the deposition of the corporate representative of CRLA was to take place on April 1, 2019.

6.     After being served with the Subpoena, Gary Nitzkin, Esq. ("Mr. Nitzkin"), a lawyer at CRLA[1], indicated to undersigned counsel that he would not produce a corporate representative at the deposition, and stated that he intended to file a motion to quash on behalf of CRLA in this Court. Nonetheless, Mr. Nitzkin did not serve any written objections to the Subpoena or the documents requested therein, and Mr. Nitzkin did not move to quash the Subpoena.

7.     On April 1, 2019, CRLA failed to produce a corporate representative for deposition or produce any documents, and ERC obtained a Default Statement. A true and correct copy of the April 1, 2019 Default Statement is attached hereto as **Exhibit B**.

8.     After failing to produce a corporate representative at the April 1, 2019 deposition, CRLA subsequently agreed to produce a corporate representative on April 3, 2019. The parties agreed that, rather than depose CRLA's corporate representative in each of the three cases pending against ERC, the April 3, 2019 deposition would cover issues relating to each action, and would be admissible in each action.

9.     However, CRLA failed to produce any documents at the April 3, 2019 deposition (the "Deposition"), and the corporate representative CRLA produced was not prepared and/or was not able to testify regarding several topics identified

---

[1] CRLA admits that it represents Mr. Meeks in this lawsuit. In fact, Mr. Nitzkin filed a Motion for Admission *pro hac vice* in this case on April 2, 2019, which is pending as of the filing of this motion.

4

in ERC's Subpoena. Additionally, counsel that appeared on behalf of CRLA, Carl Schwartz ("Mr. Schwartz") instructed the witness not to answer several categories of questions on the grounds that the questions were not relevant to this action and/or were not specifically and explicitly identified in ERC's Subpoena. A true and correct copy of the Deposition transcript is attached hereto as **Composite Exhibit C**.

10.    As set forth in greater detail in ERC's brief incorporated herein, ERC is entitled to information regarding the topic areas set forth in its Subpoena, as well as the documents requested therein. Moreover, counsel for CRLA's objections as to ERC's questioning during the deposition were without merit and improper.

WHEREFORE, ERC respectfully requests the Court enter an Order:

(i)     Compelling CRLA to produce all documents requested in ERC's Subpoena;

(ii)    Compelling CRLA's corporate representative to answer questions regarding each of the topics identified in ERC's Subpoena;

(iii)   Overruling counsel for CRLA's objections during the April 3, 2019 Deposition of CRLA's corporate representative; and

(iv)    For such other and further relief as the Court deems just and proper.

ERC further respectfully requests that the Court's Order require CRLA to reimburse ERC for its costs and fees incurred in obtaining the relief requested

herein, including the costs and fees incurred in bringing this motion and award such other relief and sanctions under Rule 37 as the Court deems appropriate.

## BRIEF IN SUPPORT OF MOTION TO COMPEL

## I. ISSUE PRESENTED

Whether ERC is entitled to depose the corporate representative of CRLA regarding each of the topic areas identified in ERC's Subpoena, and is entitled to the documents requested therein.

## II. AUTHORITY IN SUPPORT OF RELIEF SOUGHT

Fed. R. Civ. P. 26

Fed. R. Civ. P. 37

Fed. R. Civ. P. 45

*Benion v. Lecom, Incorporated*, No. 15-cv-14367, 2017 WL 4112340 (E.D. Mich. Sept. 18, 2017)

*Olivia Marie, Inc. v. Travelers Cas. Ins. Co. of America*, No. 11-12394, 2011 WL 6739400 (E.D. Mich. Dec. 22, 2011)

## III. ARGUMENT

### A.     Introduction and Legal Standard

Rule 26 permits discovery of non-privileged matters that are relevant to the claims and defenses and are proportional to the needs of a case. Fed. R. Civ. P. 26(b)(1). Rule 45 permits a party to issue a subpoena to attend a deposition and produce documents. Fed. R. Civ. P. 45(a), (c). When the recipient of the subpoena fails to comply with its obligations under Rule 45, the party issuing the subpoena may move the court where compliance is required for an order compelling compliance. Fed. R. Civ. P. 37(a)(2); Fed. R. Civ. P. 45(d)(2)(B)(i). If the party's failure to produce the information or documents was not substantially justified, then the court must award the movant's expenses including attorneys' fees if either the Court grants the motion or the party makes production after the motion is filed. *Id.* at (a)(5)(A).

### B.     Background Information

The CRLA firm has filed a total of six lawsuits against ERC based on similar facts, including the case at issue here. *See* Declaration of Jason Davis (hereinafter "Davis Dec."), attached hereto as **Exhibit D**, at ¶ 22. In each of these cases, the respective plaintiffs have asserted claims against ERC that ERC failed to give effect to dispute letters, all of which followed the same format, and all of which were alleged to have been sent by CRLA. *Id*.

9

ERC maintains stringent practices and procedures to ensure that it properly handles all correspondence received from account holders. ERC maintains an account history for every account that is placed with ERC for collection, and ERC has a "correspondence mail team" ("CMT"), which reviews incoming correspondence and uses the information contained therein to link the correspondence to a particular account. Id. at ¶¶ 6, 10. The CMT member identifies information on correspondence such as the name, address, social security number, creditor name, account balance, file numbers, and account numbers in order to associate the correspondence with a particular account." *Id*. at ¶ 11. If the CMT member cannot locate the appropriate account, the correspondence is then elevated to management who will then attempt to locate the corresponding account or accounts. *Id*. at ¶ 12. Once the proper account is located, the correspondence is scanned into ERC's computer systems and linked to the account. *Id*. at ¶ 13. After the correspondence is scanned, an Operational Support Specialist ("OSS"), will review the correspondence to ensure it is notated to the correct account. *Id*. at ¶ 14. The OSS also ensures the account has been placed in the appropriate status based on the contents of the correspondence, for example, receipt of a dispute letter for a particular account would result in the account being placed in a dispute status. *Id*. at ¶ 15.

Despite these stringent and thorough procedures for the processing of mail received by ERC, ERC has absolutely no record of receiving the correspondence purportedly sent by CRLA in each of the six cases CRLA's clients have brought against ERC. *Id*. at ¶ 23. In light of ERC's established processes for handling correspondence, the fact that ERC did not receive any of these letters, all of which came from the same firm over a period of a few years, is highly suspicious, at best.

By way of a specific example, in the case of Roosevelt Meeks, the letter allegedly sent by CRLA contained Roosevelt Meeks' first and last name, the last four digits of his social security number, the name of the original creditor, the balance of the subject account, and his home address. *Id*. at ¶ 19. This information would have been sufficient for ERC to identify the appropriate account, to process the dispute, and to appropriately notate the Plaintiff's account. *Id*. at ¶ 20. However, ERC's account history for Roosevelt Meeks does not reflect that ERC ever received any correspondence from any person regarding the account. *Id*. at ¶ 21. This is the case for each of the six actions brought by CRLA against ERC. *Id*. at ¶ 22.

In sum, ERC maintains policies and procedures to ensure that all correspondence is appropriately documented and linked to the appropriate account. The fact that all six letters which were purportedly sent by CRLA were never received or documented rises above the level of mere coincidence. As such, and as

11

set forth in greater detail below, ERC is entitled to information regarding CRLA's mailing practices, as well as specific information regarding the mailing practices with regard to each of the cases brought against ERC by CRLA

**C.     ERC is entitled to the information and documents requested in its Subpoena to CRLA.**

In Schedule A of its Subpoena, ERC identified several topics for which CRLA was required to designate one or more corporate representatives to testify. *See* Exh. A. Each of these topic areas focuses on CRLA's processes and procedures for sending and mailing correspondence, particularly with regard to dispute letters; the natural persons involved in preparing and sending correspondence, particularly with regard to dispute letters; CRLA's procedures and policies relating to service of court documents; all claims that a person did not receive communications mailed by CRLA; and CRLA's document retention policies. *See id*. Additionally, in Schedule B, ERC requested that CRLA produce documents relating to these topic areas, including, the native file for the letter CRLA purportedly sent on behalf of Roosevelt Meeks with metadata attached[2]; logs or records for tracking mail sent by CRLA's office, including logs or records reflecting metering or postage for such letters[3]; and documents relating to claims

---

[2] The Plaintiff in this case has since produced the requested document, but not until after the deposition of the corporate representative of CRLA, so ERC was unable to ask questions concerning the document at the deposition.
[3] CRLA claims that it has no such records and assuming that to be the case, then the issue is moot on this point.

from third parties that mail sent by CRLA was not received by the addressee. *See id*.

The claims brought by CRLA against ERC on behalf of CRLA's clients, either directly or indirectly through local counsel, including in the case of Roosevelt Meeks, are based on ERC's purported failure to mark each plaintiff's account as disputed after CRLA allegedly sent a dispute letter to ERC on behalf of each plaintiff. However, ERC has no record of receiving these letters that CRLA purportedly sent. Thus, the central dispute in each of the actions CRLA has brought against ERC is whether ERC received the purported dispute letters.

### 1. CRLA has waived any objections to the information and documents requested in ERC's Subpoena.

Initially, as referenced above, CRLA did not assert any written objections to ERC's Subpoena prior to the Deposition[4]. Indeed, to date, CRLA has not served any written objections, nor has CRLA filed a motion to quash ERC's Subpoena. Thus, CRLA has waived any objections it may have had to ERC's Subpoena. *See* Fed. R. Civ. P. 45(d)(2)(B) ("The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served."); *Benion v. Lecom, Incorporated*, No. 15-cv-14367, 2017 WL 4112340, at *1 (E.D. Mich. Sept. 18, 2017) ("Rule 45 governs subpoenas and provides that a nonparty served

---

[4] Upon receipt of service of the subpoena, counsel for CRLA advised that no witness would appear for the deposition and further advised that a motion to quash would be filed, however no formal objection nor motion to quash was received by ERC.

with a subpoena may make written objections to the subpoena before the time specified for compliance under the subpoena. The failure to serve written objections to a subpoena within the time specified by Rule 45[d](2)(B) typically constitutes a waiver of such objections.") (internal citations omitted); *Olivia Marie, Inc. v. Travelers Cas. Ins. Co. of America*, No. 11-12394, 2011 WL 6739400, at *2 (E.D. Mich. Dec. 22, 2011) ("A non-party's failure to timely object to the subpoena generally waives any objections.").

### 2.     The objections asserted by CRLA at the Deposition were unfounded and improper.

Early on in the Deposition, CRLA's counsel, Mr. Schwartz, stated, "we're going to be objecting generally to any testimony about topics five through ten on [Schedule A of the Subpoena] as being matters that are beyond the scope and not relevant to the cases at issue." Exh. C at 9:21-24. Topics five through ten of Schedule A of ERC's Subpoena requested that CRLA produce a corporate representative to testify regarding:

> 5.  The natural person signing any letters disputing a trade line that [CRLA] sent to ERC on behalf of [CRLA's] clients since September 2017.
>
> 6.  The mailing or sending of any letters disputing a Tradeline that [CRLA] sent to ERC on behalf of Your clients since September 2017.
>
> 7.  [CRLA's] procedures and policies relating to mailing or sending written correspondence from [CRLA's] office.

8.  [CRLA's] procedures and policies relating to service of court documents other than complaints and summonses from [CRLA's] office.

9.  All claims from any Person since September 2017 that such Person did not receive any communications mailed by [CRLA].

10. [CRLA's] document retention policies.

*See* Exh. A. Not only did Mr. Schwartz generally object to these topics, but the witness explicitly testified that she had no knowledge regarding topics seven, eight, nine, and ten. *See* Exh. C. at 17:16-19.

In addition to generally objecting to topics five through ten, throughout the Deposition, Mr. Schwartz asserted unfounded and meritless objections to a number of specific questions posed by ERC's counsel relating to these topics. For example, during the Deposition, ERC's counsel attempted to question the witness regarding information on one of CRLA's websites pertaining to appropriate mailing procedures for service of dispute letters. *See* Exh. C. at 38:18-42:2; 43:19-46:18. The specific language on the website provided that a consumer should "[w]rite a letter to the credit reporting agency that is reporting the inaccuracy on your credit report. You can do this online with each credit reporting agency, but don't. You should do it in writing and set it return receipt requested." *Id*. at 41:15-20. When ERC's counsel attempted to question the witness regarding whether CRLA's mailing practices were consistent with the language on its website, Mr. Schwartz objected on the basis that "this is not related to any of the deposition topics," and

instructed the witness not to answer. *Id*. at 40:1-41:2. Similarly, ERC's counsel introduced a video clip as an exhibit, wherein lawyers from CRLA discussed sending dispute letters, and specifically discussed that letters should be sent in some fashion in which the sender can confirm delivery. *Id*. at 49:15-52:22. Mr. Schwartz again objected to any questioning by ERC's counsel relating to this video clip on the basis that this clip was "past anything that is in the deposition topics," and instructed the witness not to answer. *Id*. at 49:23-3.

Further, during the Deposition, Mr. Schwartz refused to let the witness answer questions regarding whether she had ever been asked to prove the mailing of any dispute letters sent by CRLA. *Id*. at 68:2-74:5. Counsel for CRLA again objected to this line of questioning on the grounds that it "goes beyond the deposition topics of what she's been asked to prove and not prove." *Id*. at 68: 4-6. Mr. Schwartz also instructed the witness not to answer questions regarding two specific dispute letters sent to ERC, as well as a certificate of service purportedly signed by the witness in a case in which a default was entered against ERC, on the grounds that these topics were beyond the scope of the deposition topics and were not relevant to the current action. *Id*. at 71:20-74:5; 80:22-82:16.

Contrary to Mr. Schwartz's assertions, topics five through ten on Schedule A of the Subpoena, as well as the specific questions asked by ERC's counsel during the deposition, are highly relevant and probative in this action. CRLA has brought

a total of six actions against ERC based on the claim that CRLA mailed a dispute letter to ERC on behalf of its client, and ERC thereafter failed to mark the account as disputed. However, in what could only be described as highly suspicious in light of ERC's processes and procedures for receiving, processing and logging correspondence, ERC has no record of receiving any of these six letters. In light of this disputed issue, the topics identified in ERC's Subpoena, such as CRLA's policies and procedures for sending dispute letters and persons involved with sending dispute letters, are highly relevant to the present action, and are proportional to the needs of this litigation as they are probative on the central factual issue in dispute, i.e., the sending and receipt of the letters. For example, CRLA's specific policies regarding mailing dispute letters—and whether those policies were followed—is directly probative as to the issue of ERC's receipt, or lack thereof, of CRLA's letters. Likewise, instances in which other persons have claimed that they have not received communications purportedly mailed by CRLA are relevant to this action in that they are probative as to whether there is a pattern of CRLA's communications not being received, and whether CRLA was aware of this pattern and consciously chose to ignore it. On CRLA's website, it reflects having offices in 13 states and claims the firm has "literally written thousands of dispute letters for [its] clients." *Id*. at Ex 3, p.1. Moreover, CRLA's website expressly offers to prospective clients:

> **We set the credit reporting agencies and the creditors up for a lawsuit if they don't fix your credit report.**

*Id*. Given the unusual circumstances here, where repeated lawsuits have been filed against ERC by CRLA's clients, where CRLA claims the mailing of a dispute letter, but for which ERC has no record of delivery, despite ERC's robust mail processing procedures to avoid lawsuits like these, ERC is entitled to the information sought so that it can properly defend the claims at issue.

At the trial of this matter, the evidence and testimony sought is relevant for impeachment of any testimony from CRLA as to the proper mailing of the letter, and would further be probative evidence in ERC's rebuttal of any presumption of delivery upon mailing.

In light of the foregoing, this Court should overrule CRLA's objections, and compel CRLA to answer the questions presented at the deposition regarding the issues discussed herein. Moreover, CRLA should be compelled to produce a proper corporate representative with the appropriate knowledge to testify regarding the topics set forth in the subpoena, as the first corporate representative explicitly testified that she did not have knowledge and could not testify regarding several of the topics listed in ERC's Subpoena.

Further, although Mr. Schwartz only briefly referenced ERC's document requests at the Deposition by simply referring to Mr. Nitzkin's prior email

correspondence (*see* Exh. C. at 92: 13-25), the documents requested in ERC's Subpoena, are likewise relevant and proportional. These documents are directly related to when the letter was created, and whether it was actually created on the date reflected on its face. Thus, because the documents requested in ERC's Subpoena are reasonably calculated to lead to the discovery of admissible evidence, and are proportional to the needs of this litigation as they are probative on the central factual dispute, CRLA should be compelled to produce the documents listed in Schedule B of ERC's Subpoena, to the extent they exist.

WHEREFORE, ERC respectfully requests the Court to enter an Order:

(v)     Compelling CRLA to produce all documents requested in ERC's Subpoena to the extent they exist;

(vi)    Compelling CRLA's corporate representative to answer questions regarding each of the topics identified in ERC's Subpoena;

(vii)   Overruling CRLA's objections during the April 3, 2019 Deposition of CRLA's corporate representative; and

(viii)  For such other and further relief as the Court deems just and proper.

ERC further respectfully requests that the Court's Order require CRLA to reimburse ERC for its costs and fees incurred in obtaining the relief requested herein, including the costs and fees incurred in bringing this motion and award such other relief and sanctions under Rule 37 as the Court deems appropriate.

DATED: April 12, 2019

**SMITH, GAMBRELL & RUSSELL, LLP**

*/s/    Scott S. Gallagher*
Scott S. Gallagher
Florida Bar No. 0371970
Email: ssgallagher@sgrlaw.com
Richard D. Rivera
Florida Bar No. 108251
Email: rrivera@sgrlaw.com
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
Tel:  (904) 598-6111
Fax:  (904) 598-6211

*Attorneys for Defendant, Enhanced Recovery
Company, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 12, 2019, I served a copy of the foregoing by electronic and U.S. mail to:

| | |
|---|---|
| Scot Groghan, Esq. | Credit Repair Lawyers of America |
| 22142 West Nine Mile Road | c/o Gary Nitzkin, Registered Agent |
| Southfield, MI 48033 | 22142 West Nine Mile Road |
| Email: scot@crlam.com | Southfield, MI 48033 |
| *Attorneys for Plaintiff* | Email: gary@crlam.com |

*/s/ Scott S. Gallagher*
Attorney